IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF WEST VIRGINIA

BECKLEY DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | |
| | ) | |
| v. | ) | Case No 5:14-mj-0145 |
| | ) | |
| DARRELL LEE PRICE, JR. | ) | |

MEMORANDUM OPINION AND ORDER

Defendant was charged in three Violation Notices with (1) operating a motor vehicle while under the influence of alcohol to a degree which rendered him incapable of the safe operation of the motor vehicle in violation of 36 C.F.R.§ 4.23(a)(1); (2) driving under the influence of alcohol in violation of 36 C.F.R. § 4.23(a)(2)[1]; and (3) having an open container of an alcoholic beverage in a motor vehicle in violation of 36 C.F.R. § 4.14(b)[2]. 36 C.F.R. 1.3(a) states as the penalty for violation of the Code of Federal Regulations Sections under which Defendant is charged that "[a] person convicted of violating a provision of the regulations contained in parts 1 through 7, 12 and 13 of this chapter within a part area . . . shall be punished by a fine as provided by law, or by

---

[1] 36 C.F.R. § 4.23(a)(1) and (2) provide as follows:

(a) Operating or being in actual physical control of a motor vehicle is prohibited while:
   (1)  Under the influence of alcohol . . . to a degree that renders the operator incapable of safe operation; or
   (2)  The alcohol concentration in the operator's blood or breath is 0.08 grams or more of alcohol per 100 milliliters of blood or 0.08 grams or more of alcohol per 210 liters of breath.

[2] 36 C.F.R. 4.14(b) provides as follows:

(b) Carrying or storing a bottle, can or other receptacle containing an alcoholic beverage that is open, or has been opened, or whose seal is broken or the contents of which have been partially removed, within a motor vehicle in a park area is prohibited.

imprisonment not exceeding 6 months, or both, and shall be adjudged to pay all costs of the proceedings."

A bench trial was held respecting the charges on Tuesday, March 10, 2015, with Assistant United States Attorney Eric Bacaj representing the United States and Assistant Federal Public Defender Rhett Johnson representing Defendant. At the trial, Law Enforcement Park Ranger Karl Keach testified that while at the Sandstone Visitors Center parking lot at around 9:20 in the evening on September 12, 2014, he saw Defendant's vehicle come down a gravel road which connects a cemetery to the Visitors Center parking lot. Defendant's vehicle went past him, and he noticed that it had no license plate lights. Ranger Keach testified that he thought that it was suspicious that Defendant's vehicle was coming down from the cemetery in the dark. He testified that he followed Defendant's vehicle in his patrol car to a stop sign where the Visitors Center Road meets Meadow Creek Road. Ranger Keach stated that Defendant turned left and Ranger Keach did so as well. Ranger Keach stated that he then activated his emergency lights and conducted a traffic stop of Defendant. Ranger Keach testified that Defendant was driving and had a female passenger. Ranger Keach stated that he approached the vehicle on the passenger side and noticed a pistol and a grinder for marijuana in the vehicle. He asked Defendant for his driver's license, registration and proof of insurance. Ranger Faherty arrived and approached the vehicle on the driver's side. Ranger Keach and Ranger Faherty asked Defendant and his passenger to get out of the vehicle. Ranger Keach testified that the Rangers further noticed an open bottle of a coffee flavored liquor in the vehicle. A photograph of the bottle was introduced in evidence. Ranger Keach testified that Ranger Faherty conducted field sobriety testing of Defendant. Ranger Keach testified that he saw the walk and turn and one leg stand parts of the field sobriety test. Ranger Keach testified that Defendant was placed under arrest for DUI and Ranger Faherty took him to the Beckley, West Virginia, Police Department

where he was breathalyzed. Defendant was then taken to Southern Regional Jail. On cross examination, Ranger Keach was shown an overview of a photograph of the area where the traffic stop occurred and identified where he first saw Defendant's vehicle and where he stopped it. Ranger Keach further testified that Defendant did not exhibit any indicators of impairment in driving his vehicle. He testified that in communicating with and watching Defendant during the stop he did not notice any signs (odor of alcohol, slurred speech, etc.) that Defendant was intoxicated.

Ranger Mark Faherty testified next. Ranger Flaherty testified that he participated in the stop of Defendant's vehicle on September 12, 2014. He testified that in speaking with Defendant, he detected an odor of alcohol and Defendant said that he drank a couple of shots of the coffee flavored liquor about an hour earlier. For these reasons, Ranger Flaherty asked Defendant to take field sobriety tests. Ranger Faherty testified that he administered the walk and turn test. He testified that Defendant was unable to keep his balance, raised his arms and stepped off the line indicating impairment during the test. Ranger Faherty also administered the one leg stand test. He testified that Defendant raised his arms and put his foot down indicating impairment during the test. Ranger Flaherty recorded his administration of the field sobriety test on his body camera, and the video recording was played. Ranger Faherty testified that he then placed Defendant under arrest and transported him to the Beckley Police Department. There, a Beckley Police Officer administered a breathalyzer test. Ranger Faherty then transported Defendant to the Southern Regional Jail. On cross examination, Ranger Faherty was asked about the importance of adhering to the NHTSA [National Highway Traffic Safety Administration] standard for administering the walk and turn test. Ranger Faherty indicated that he deviated slightly from the standard. Ranger Faherty was asked the same question with respect to administering the walk and turn test. Ranger Faherty testified that he complied with the NHTSA standard for administering that test though he did not instruct Defendant

precisely as the standard required.

The United States then called Lieutenant Timothy White of the West Virginia State Police assigned to the breath alcohol section and responsible for the maintenance and calibration of Intoximeter ECIR 2 breathalyzers throughout the State of West Virginia. Lieutenant White testified that the Intoximeter ECIR 2 is a conforming product according to NHTSA and explained how it works and about built in safeguards, which Lieutenant White called "the evidential test sequence", to assure the accuracy of the product's testing each time it is used. Lieutenant White then testified respecting the maintenance of the specific machine used to test Defendant. On cross examination, Lieutenant White was asked about the ECIR 2's margin of error, Henry's Law, Defendant's test results (.11), how the machine measures the amount of alcohol in a person's breath and sources of error which can effect the machine's performance. Lieutenant White testified further respecting the operation of ECIR 2 breathalyzer on redirect and re-cross examination. He further testified respecting the dates when the Intoximeter ECIR 2 used to test Defendant underwent preventative maintenance and calibration.

Sergeant Roy Redden of the Beckley Police Department then testified. He stated that he is certified to operate the Intoximeter ECIR 2 and breathalyzed Defendant using the machine on September 12, 2014. He testified that he was in the room with Defendant along with two Park Rangers. Sergeant Redden testified generally respecting the protocol for the administering a breath test using the Intoximeter ECIR 2. He then testified respecting testing Defendant using the machine. He indicated that he began the protocol at about 10:30 p.m. by obtaining Defendant's consent, observing Defendant and making sure the machine was working and ready for testing. He testified that he obtained printouts respecting Defendant's test results. A copy of a printout of Defendant's results was admitted in evidence indicating .11 grams of alcohol per 210 liters. The United States then rested.

Defendant called Mr. Patrick Kearns, an investigator with the Office of the Federal Public Defender. Mr. Kearns testified that he went to the area and place where Defendant's arrest occurred. He testified respecting that location looking at a topographical map. He also looked at the photograph on which Ranger Keach indicated where he saw Defendant's vehicle and where he stopped it. Mr. Kearns testified that there are signs along the roadway (Meadow Creek Road) near the Sandstone Visitors Center indicating that drivers are entering and leaving the national park. Photographs of the signs were admitted in evidence. Looking again at the topographical map, Mr. Kearns marked where the signs were located. Mr. Kearns then testified respecting a video of the area including the locations of the signs. On cross examination, Mr. Kearns testified that he believed that the boundary of the national park in the area was where the signs were. Defendant rested, and the United States called Ranger Keach in rebuttal of the evidence which Defendant submitted. Ranger Keach testified that he was "very familiar" with the boundary of the national park. He testified that the signs were put up by the West Virginia Department of Highways. Ranger Keach testified that, referencing maps and GPS information, the signs did not correlate with the actual congressional boundary of the national park. He testified that the locations which he marked on the photograph were within the national park. He drew the boundary of the national park in the area on the topographical map which Defendant had introduced. On cross examination, Ranger Keach testified again that he stopped Defendant's vehicle within the boundary of the national park. The United States rested.

The Court then heard argument. The United States' attorney stated that the passenger's statement respecting the bottle of coffee flavored liquor, Defendant's statement to Ranger Faherty that he drank some of the coffee flavored liquor some time before the stop of his vehicle and Ranger Keach's photograph of the bottle taken during the stop supported the open container charge. For

5

proof of the charge that Defendant was operating a motor vehicle while under the influence of alcohol to a degree which rendered him incapable of the safe operation of the motor vehicle, counsel for the United States referred to Ranger Faherty's findings in conducting the field sobriety tests and the Intoximeter ECIR 2 results. Respecting the driving under the influence charge, counsel for the United States referred to Sergeant Redden's testimony about the Intoximeter ECIR 2 results. Defendant's attorney pointed out respecting the open container charge that there was no testimony respecting the actual contents of the bottle suggesting that the  picture of the bottle as it was introduced was insufficient to prove that the bottle actually contained alcohol. Defendant's attorney then discussed Ranger Faherty's testimony respecting his field sobriety testing of Defendant referring to United States Magistrate Judge Grimm's decision in United States v. Horn, 185 F.Supp.2d 530 (D.Md. 2002). Defendant's counsel emphasized the importance of adhering strictly to the NHTSA requirements in conducting field sobriety testing and Ranger Faherty's testimony indicating that he did not do so. Defendant's counsel argued that the evidence did not support the United States' claim that Defendant was operating a motor vehicle while under the influence of alcohol to a degree which rendered him incapable of the safe operation of the motor vehicle referring to Ranger Keach's testimony that in watching Defendant drive along, he did not see any indication that Defendant was impaired. Defendant's attorney pointed out that Ranger Keach did not notice impairment in speaking with Defendant initially after the stop and when Defendant produced his drivers license, registration and proof of insurance. Thus, Defendant's attorney claimed that it was not evident that Defendant was under the influence of alcohol to a degree which rendered him incapable of safe operation of his vehicle. Respecting under the driving under the influence charge, Defendant's attorney focused on the observation period required before administering the Intoximeter ECIR 2 referring to Sergeant Redden's testimony which indicated that he or the Rangers

only generally observed Defendant for the required period of time suggesting that the officers did not actually observe Defendant as carefully as required. Defendant's attorney pointed out that Ranger Keach and Ranger Faherty did not testify that they observed Defendant during the observation period to assure that Defendant did nothing and nothing occurred during that period to make the testing inaccurate. Finally, Defendant's attorney addressed the evidence impacting the Rangers' jurisdiction stating that the United States did not produce evidence other than Ranger Keach's testimony respecting where the national park's boundary is and urging that the evidence which Defendant submitted respecting the placement of the signs indicating the boundary of the park is sufficient to make jurisdiction an important issue. The United States' attorney responded indicating that the evidence clearly demonstrated that Defendant drove near the Sandstone Visitors Center which is certainly within the boundary of the national park. Counsel for the United States then reiterated that the results of the field sobriety test and in particular Defendant's inability to maintain balance support the conclusion that he was incapable of safe operation of his vehicle. Finally, counsel for the United States stated that Sergeant Redden testified that Defendant was observed as required and the Intoximeter ECIR 2 was operated and performed properly.

**DISCUSSION**

**The Jurisdictional Issue.**

Defendant questions whether Rangers Keach and Flaherty stopped him within the boundary of the New River Gorge National River pointing to road signs indicating the boundary line of the National Park and therefore had jurisdiction to do so. Ranger Keach testified that he was well acquainted with the boundaries of the New River Gorge National River where Defendant was stopped and arrested, and Defendant was stopped and arrested within those boundaries. The Court is convinced from Ranger Keach's testimony that Ranger Keach stopped Defendant's vehicle and

Defendant was arrested within the boundary of the New River National River. See United States v.
King, 894 F.Supp.2d 737, 743 - 744 (W.D.Va. 2012)(Greater weight given to testimony of Park
Ranger because he was "required to be aware of national park boundary lines for his duties as a
National Park Service ranger.) Assuming, however, that Ranger Keach stopped Defendant's vehicle
and Defendant was arrested beyond the boundary of the New River National River, the charges
against Defendant in this case would nevertheless be viable. Citing 16 U.S.C. § 1a-6(b), Courts have
held that law enforcement personnel within the National Park System may follow a defendant
beyond the boundary of a National Park to investigate an offense against the United States which
occurred within the National Park, stop the vehicle and arrest its driver. United States v. Ryan, 729
F.Supp.2d 479, 484 - 485 (D.Mass. 2010); United States v. Jones, 428 F.Supp.2d 497, 503 (W.D.Va.
2006); United States v. Cronin, 2012 WL 4888421 (D.Mass. 2012).

**The NHTSA Standard Field Sobriety Tests [SFSTs].**

The NHTSA has developed three SFSTs, two of which were administered in this case. They
are the Walk and Turn [WAT] test, the One Leg Stand [OLS] test and the Horizontal Gaze
Nystagmus [HGN] test. The NHTSA has identified eight standardized clues for the WAT and four
for the OLS, the observation of two of which for each test indicates a level of intoxication. See
United States v. Horn, 185 F.Supp.2d at 537 - 538. "The results of properly conducted SFSTs may
be considered to determine whether probable cause exists to charge a driver with driving while
intoxicated . . . or under the influence of alcohol[.]" Id., at 532 - 533. "A police officer trained and
qualified to perform SFSTs may testify with respect to his or her observations of a subjects
performance of these tests, if properly administered . . . and these observations are admissible as
circumstantial evidence that the defendant was driving while intoxicated or under the influence."
Id., at 533.

While Ranger Faherty did not adhere strictly to the NHTSA standards in administer the WAT and OLS tests and did not administer the HGN test, the undersigned does not find that these circumstances invalidate the charges against Defendant. Ranger Faherty was entitled to rely upon the totality of the circumstances he found in assessing whether or not probable cause existed that Defendant was driving under the influence of alcohol. The undersigned finds that Ranger Faherty's observations in administering the WAT and OLS tests along with Defendant's admission that he had consumed some of the coffee flavored liquor a bottle of which was found in Defendant's vehicle amounted to sufficient evidence upon which Ranger Faherty could find probable cause that Defendant was driving while under the influence of alcohol and take him to the Beckley Police Department for the breathalyzer.

### The 36 C.F.R. § 4.23(a)(1) and (2) Charges.

"To prove the elements [under 36 C.F.R. § 4.23(a)(1)] the government must show that [the defendant] (1) was operating or was in actual physical control of a vehicle, (2) under the influence of alcohol, (3) to a degree of intoxication that rendered him incapable of safe operation." United States v. King, 894 F.Supp.2d 737, 745 (W.D.Va. 2012). "[E]vidence of . . . blood alcohol concentration has probative value for a charge under § 4.23(a)(1). * * * But the BAC results are 'only one piece of evidence that must be considered' in a § 4.23(a)(1) analysis." United States v. Foster, 829 F.Supp.2d 354, 368 (W.D.Va. 2011). "Field evidence" is also relevant including evidence respecting a defendant's driving (observed weaving, driving erratically or difficulty stopping) condition and appearance (observed odor of alcohol, red and watery eyes, slurred speech, or confused or nervous) and dexterity and coordination (observed in administering the SFSTs). United States v. Foster, 829 F.Supp.2d at 369 - 370. Proof of a violation of 36 C.F.R. § 4.23(a)(2) is accomplished by means of evidence obtained through an acceptable testing procedure that the

alcohol concentration in the breath of the person charged was 0.08 grams or more of alcohol per 210 liters of breath when he was operating or in actual physical control of a motor vehicle. No additional proof such as proof of impairment is necessary. See United States v. Webb, 12 F.Supp.3d 816, 822 (S.D.W.Va. 2013).

Defendant's breathalyzer results indicated .11 grams of alcohol per 210 liters, clearly above 0.08 grams or more of alcohol per 210 liters of breath and evidencing his intoxication under 36 C.F.R. § 4.23(a)(2). It is not evident beyond a reasonable doubt, however, that Defendant was so intoxicated that he was incapable of operating his vehicle safely. Ranger Keach stopped Defendant based upon his observation that Defendant's vehicle's license plate light was not working, a non-moving violation, and general suspicion in observing Defendant's vehicle come out of the cemetery after dark. Ranger Keach testified that Defendant did not exhibit any indicators of impairment in driving his vehicle. He testified that in communicating with and watching Defendant during the stop he did not notice any signs (odor of alcohol, slurred speech, etc.) that Defendant was intoxicated. Ranger Faherty testified on the other hand that he noticed an odor of alcohol as he was speaking with Defendant. While Defendant's breathalyzer test results, performance of the WAT and OLS tests and admission that he had consumed some of the coffee flavored liquor found in his vehicle amount to evidence that Defendant was driving under the influence of alcohol, it is nevertheless not sufficiently evident that he was so intoxicated that he was incapable of operating his vehicle safely. The undersigned therefore concludes that the evidence does not support a finding of guilt respecting the charge that he was operating a motor vehicle while under the influence of alcohol to a degree which rendered him incapable of the safe operation of the motor vehicle in violation of 36 C.F.R.§ 4.23(a)(1) and concludes that the evidence supports a finding of guilt respecting the charge that Defendant was driving under the influence of alcohol in violation of 36 C.F.R. § 4.23(a)(2).

**The 36 C.F.R. § 4.14(b) Charge.**

Ranger Keach testified that he and Ranger Faherty noticed a bottle of coffee flavored liquor in Defendant's vehicle. Ranger Faherty testified that Defendant said that he drank a couple of shots of the coffee flavored liquor about an hour earlier. The Rangers confiscated the bottle of alcohol and a picture of it was introduced in evidence. This evidence supports a finding of guilt respecting the charge that Defendant had an open container of an alcoholic beverage in a motor vehicle in violation of 36 C.F.R. § 4.14(b).

Accordingly, the Court finds that Defendant is **NOT GUILTY** of violating 36 C.F.R. § 4.23(a)(1) as charged in Violation Notice No. 3173364 (Document No. 1.), is **GUILTY** of violating 36 C.F.R. § 4.23(a)(2) as charged in Violation Notice No. 3173365 (Document No. 3.) and is **GUILTY** of violating 36 C.F.R. § 4.14(b) as charged in Violation Notice No. 3173751 (Document No. 5.). Defendant shall appear for Sentencing before United States Magistrate Judge Omar J. Aboulhosn on **Tuesday, February 9, 2016, at 10:00 a.m., in Beckley**.

The Clerk is directed to transmit a copy of this Memorandum Opinion and Order to counsel of record.

ENTER: December 30, 2015.

R. Clarke VanDervort
United States Magistrate Judge

11